**FILED**
CLERK, U.S. DISTRICT COURT

**5/23/2024**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CDO_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>YANG SONG,<br>JUNWEI JIANG,<br>ZHENGXUAN HU,<br>YUSHAN LIN, and<br>SHUYI XING,<br><br>　　　　Defendants. | CR No. 2:24-cr-00331-AB<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud and Mail Fraud; 18 U.S.C. § 1028A: Aggravated Identity Theft; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 2320: Conspiracy to Traffic in Counterfeit Goods; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. §§ 981(a)(1)(C), 2323(b), and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

                    INTRODUCTORY ALLEGATIONS AND DEFINITIONS

At all times relevant to this Indictment:

Trademarks and Counterfeit Marks

1.   A "trademark" is a word, phrase (such as a logo), symbol or design (such as an icon), or a combination thereof, which identifies and distinguishes the source of the goods of one particular manufacturer from those of other manufacturers.  A trademark is often

a valuable asset, equated with the goodwill of a business
organization, which can influence consumers in purchasing decisions.
A "design mark" and a "standard character mark" are types of
trademarks.  Trademarks are registered for use in connection with
particular types of goods or services.

2.   A trademark serves a variety of purposes.  First, it avoids
product confusion by allowing consumers to have confidence that two
products for sale bearing the identical trademark were manufactured
by the same company and will be of the same quality.  Second, it
permits consumers to make an informed choice to purchase a name-brand
good based upon past experience, word-of-mouth, brand loyalty, and
advertising impact.  Third, it enables consumers who experience a
problem with the name-brand product they have purchased to seek
recourse through the actual manufacturer by returning the goods to
the seller or seeking warranty or other recourse through the
manufacturer.  Fourth, it allows the trademark owner to distinguish
and protect its products by giving that company exclusive rights as
the trademark owner.  This permits the legitimate trademark owner to
recoup investments of time, money, labor, and creativity and to
profit from its endeavors in bringing a particular product to market.

3.   A counterfeit mark is: (a) a spurious mark used in
connection with trafficking in goods; (b) identical with, or
substantially indistinguishable from, a mark registered for those
goods or services on the principal register of the United States
Patent and Trademark Office and in use, whether or not defendants
knew such mark was so registered; (c) that is applied to or used in
connection with the goods or services for which the mark is

1  registered; and (d) the use of which was likely to cause confusion,

2  to cause mistake, or to deceive.

3  Apple Inc.

4      4.   Apple Inc. ("Apple") was a multinational corporation that

5  designed, developed, and sold consumer electronic devices, including

6  the Apple iPhone ("iPhone"), the Apple iPad ("iPad"), and other

7  devices, such as the Apple Watch, Apple Pencil, and AirPods.  The

8  United States Patent and Trademark Office had registered on its

9  principal register a number of trademarks for Apple for use in

10 connection with computer hardware and software of a wide variety,

11 including handheld and mobile computers and peripherals, including

12 the following, all of which were in use at all times relevant to this

13 Indictment:

14      a.   Trademark number 3,679,056, which registered the Apple

15 logo design mark, as shown below;



20      b.   Trademark number 3,928,818, which registered the Apple

21 standard character mark, as shown below;

APPLE

24      c.   Trademark number 3,669,402, which registered the Apple

25 iPhone standard character mark, as shown below; and

iPhone

3

d.    Trademark number 4,537,934, which registered the Apple iPad standard character mark, as shown below.

# IPAD

5.    All genuine Apple iPhones had an International Mobile Equipment Identity ("IMEI") number and serial number that were unique to each device.  All genuine Apple iPads had a serial number that was unique to each device, and iPads with cellular connectivity also had an IMEI number that was unique to each device.  All other genuine Apple devices had serial numbers unique to the device.  Removing or altering IMEI or serial numbers of Apple devices interfered with Apple's ability to control the quality of its products bearing the Apple marks, and the experience of Apple customers whose IMEI and serial numbers were improperly replicated.  As a result, Apple iPhones, iPads, and other devices without an accurate IMEI or serial number were not authentic Apple devices.

6.    Apple provided a one-year warranty for new iPhones, iPads, and other devices that warranted against product defects and allowed customers to return a non-functioning device to Apple or an authorized Apple reseller and receive a replacement device.  Apple also sold insurance protection plans, such as AppleCare+, that extended beyond one year and covered accidental damage and similarly allowed a customer to return a non-functioning Apple device and receive a replacement in exchange.  It was the general practice of Apple to exchange broken iPhones, iPads, and other devices that were covered by an Apple warranty for new genuine iPhone, iPad, or device for a nominal fee.

4

7.   A counterfeit Apple device was a device not assembled or manufactured by Apple but appearing to be an iPhone, iPad, or other Apple device, and bearing one or more counterfeit marks, to wit, marks identical with or substantially indistinguishable from one or more of the above-described trademarks registered by Apple.  The counterfeit marks were each likely to cause confusion, to cause mistake, or to deceive.

1

COUNT ONE

2

[18 U.S.C. § 1349]

3

[ALL DEFENDANTS]

4      The Grand Jury hereby realleges and incorporates by reference

5 paragraphs 1 through 7 of the Introductory Allegations and

6 Definitions of this Indictment as though fully set forth herein.

7 A.   OBJECTS OF THE CONSPIRACY

8      1.   Beginning on an unknown date but no later than December 18,

9 2015, and continuing through at least March 12, 2024, in Los Angeles,

10 San Bernardino, Riverside, and Orange Counties, within the Central

11 District of California, and elsewhere, defendants YANG SONG ("SONG"),

12 JUNWEI JIANG ("JIANG"), ZHENGXUAN HU ("HU"), YUSHAN LIN ("LIN"), and

13 SHUYI XING ("XING") knowingly and willfully conspired and agreed with

14 each other, and other persons known and unknown to the Grand Jury, to

15 commit wire fraud, in violation of Title 18, United States Code,

16 Section 1343, and mail fraud, in violation of Title 18, United States

17 Code, Section 1341.

18 B.   MANNER AND MEANS OF CONSPIRACY

19      2.   The objects of the conspiracy were carried out, and to be

20 carried out, in substance, as follows:

21           a.   Defendants SONG and JIANG, and other co-conspirators

22 located in the United States, coordinated with co-conspirators in

23 China to ship counterfeit Apple iPhones, iPads, and other devices to

24 defendants SONG and JIANG, and other co-conspirators in the United

25 States.  The counterfeit Apple devices shipped to the United States

26 were designed to look like genuine Apple devices and included

27 identification numbers (IMEI and serial numbers) matching genuine

28 identification numbers on real Apple devices that had been sold in

the United States and Canada, were owned by real persons, and under warranty through Apple's manufacturer warranty or AppleCare+.

b.   Defendants SONG, JIANG, HU, LIN, and XING, and other co-conspirators, rented or caused to be rented mailboxes at numerous U.S. Post Offices, United Parcel Service ("UPS") Stores, and other commercial mailbox rental businesses for the purpose of the scheme.

c.   Co-conspirators in China mailed the counterfeit Apple devices to multiple addresses throughout the Central District of California.

d.   Defendants SONG, JIANG, HU, LIN, and XING, and other co-conspirators, then fraudulently returned the counterfeit Apple iPhones, iPads, and other devices to Apple as if the counterfeit Apple devices they returned were genuine Apple devices that had been legitimately purchased and were eligible for Apple's warranty programs and that defendants were the lawful possessors of the real Apple devices bearing the IMEI and serial numbers that were on the counterfeit Apple devices.  Defendants and their co-conspirators fraudulently represented that the counterfeit Apple devices they returned were genuine Apple devices that were broken or non-operational and therefore were covered by Apple's warranty programs. Defendants and their co-conspirators, however, knew that the devices they returned were actually counterfeit Apple devices and not covered by Apple's warranty programs and that the real Apple devices bearing the IMEI and serial numbers listed on the counterfeit devices were owned by real people.  Defendants knew that Apple would replace or repair the counterfeit Apple devices for genuine Apple devices or parts based on these false representations, and Apple did, in fact,

replace or repair these counterfeit Apple devices based on the fraudulent representations that defendants made to Apple.

e. Defendants SONG, JIANG, HU, LIN, and XING, and other co-conspirators, including runners that defendants hired for the scheme, fraudulently returned the counterfeit Apple devices to Apple in person at Apple stores or through the mail in the following ways:

i. Defendants SONG, JIANG, HU, LIN, and XING, and other co-conspirators, either visited Apple stores throughout the Central District of California for the service of the counterfeit Apple devices or processed service requests for the counterfeit Apple devices online. Defendants provided false reasons for the requested service of the counterfeit Apple devices, including that the devices would not power on, were physically damaged, or had other defects. Rather than provide their real residential addresses to Apple, defendants usually provided Apple with various mailboxes that they rented or caused to be rented for the scheme, along with aliases that they would occasionally use for the scheme. Defendants also deliberately misspelled their names, along with their mailing addresses, and added or removed extra characters to the mailing addresses to disguise the fact that the same persons processed numerous repairs and exchanges of Apple devices.

ii. Defendants SONG, JIANG, HU, LIN, and XING, and other co-conspirators, processed multiple service requests of counterfeit Apple devices on a given day, and sometimes visited multiple Apple stores throughout the Central District of California in a single day, where they fraudulently returned and attempted to return the counterfeit Apple devices for genuine Apple devices.

iii. During some of defendants' in-store visits, Apple sometimes replaced or repaired the counterfeit Apple device with a genuine Apple device in the same visit.  On other occasions, Apple did not replace or repair the counterfeit Apple device during the same visit.  In those cases, Apple either took the counterfeit Apple device from defendants during an in-store visit or directed defendants to mail the counterfeit Apple device directly to Apple repair centers.  Apple then shipped, via a private and commercial interstate carrier, a genuine replacement Apple device or a repaired device to either the Apple store, where defendants returned to pick up the replacement Apple device, or to defendants at their various mailboxes throughout the Central District of California.

f.   After they had successfully returned the counterfeit Apple devices for genuine Apple devices, defendants SONG, JIANG, HU, LIN, and XING, and other co-conspirators, shipped or caused to be shipped the genuine Apple devices to co-conspirators located in the United States and abroad, primarily in China, where the genuine Apple devices were resold at a substantial profit.

g.   Through this fraudulent scheme, defendants SONG, JIANG, HU, LIN, and XING fraudulently returned and attempted to return over 16,000 counterfeit Apple devices, causing at least $12.3 million in losses to Apple.

C.   OVERT ACTS

3.   On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants SONG, JIANG, HU, LIN, and XING, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt

acts, among others, in the Central District of California, and elsewhere:

Overt Act No. 1:    On December 18, 2015, a co-conspirator sent defendant JIANG a list of counterfeit iPhones with valid Apple IMEI numbers corresponding to genuine, in-warranty iPhones.

Overt Act No. 2:    On May 8, 2016, defendant JIANG sent defendant SONG electronic messages about changes in Apple's warranty repair program and discussed how the new policy would make it more difficult to fraudulently return counterfeit iPhones.

Overt Act No. 3:    On May 20, 2016, defendant JIANG sent defendant SONG electronic messages indicating that an Apple employee at the Apple Irvine Spectrum store in Irvine, California, rejected a counterfeit iPad that he attempted to fraudulently return and told him it was not a genuine iPad.

Overt Act No. 4:    On July 29, 2016, defendant JIANG sent an individual electronic messages about a potential job shipping and receiving counterfeit Apple devices.

Overt Act No. 5:    On September 7, 2016, defendants SONG, LIN, and XING filled out applications for mail to be delivered to mailboxes at a UPS Store in Fountain Valley, California.

Overt Act No. 6:    On September 21, 2016, defendants SONG and LIN submitted online repair requests for counterfeit iPhones that listed defendants SONG's and LIN's mailboxes at a UPS Store in Fountain Valley, California.

Overt Act No. 7:    On December 7, 2016, defendants SONG, LIN, and XING filled out new applications for mail to be delivered to new mailboxes at a UPS Store in Fountain Valley, California.

1    <u>Overt Act No. 8:</u>   On December 16, 2016, defendant XING

2  submitted an online repair request for a counterfeit iPhone and

3  listed his mailing address as mailbox "#369&@" at a UPS Store in

4  Montebello, California.

5    <u>Overt Act No. 9:</u>   On December 22, 2016, defendant XING

6  submitted an online repair request for a counterfeit iPhone and

7  listed his mailing address as mailbox "#221&@#" at a UPS Store in

8  Fountain Valley, California.

9    <u>Overt Act No. 10:</u>   On December 23, 2016, defendant XING

10  submitted an online repair request for a counterfeit iPhone and

11  listed his mailing address as mailbox "#369@&#" at a UPS Store in

12  Montebello, California.

13    <u>Overt Act No. 11:</u>   On December 24, 2016, defendant XING

14  submitted an online repair request for a counterfeit iPhone and

15  listed his mailing address as mailbox "#221@&#" at a UPS Store in

16  Fountain Valley, California.

17    <u>Overt Act No. 12:</u>   On January 4, 2017, defendant JIANG filled

18  out an application for mail to be delivered to a mailbox at a UPS

19  Store in Walnut, California.

20    <u>Overt Act No. 13:</u>   On January 10, 2017, defendants SONG and

21  XING rented mailboxes at a U.S. Post Office in Walnut, California.

22    <u>Overt Act No. 14:</u>   On February 8, 2017, defendant SONG

23  instructed defendant JIANG, via electronic message, to use a new

24  mailbox that was opened for Apple returns and to add a # symbol

25  before and after the street number, remove letters from the street

26  names, and add other random characters to disguise the addresses

27  provided to Apple for the fraudulent returns of counterfeit Apple

28  devices.

1       Overt Act No. 15:   On March 3, 2017, defendant XING submitted

2    an online repair request for a counterfeit iPhone and listed his

3    mailing address as mailbox "#221#" at a UPS Store in Fountain Valley,

4    California.

5       Overt Act No. 16:   On April 1, 2017, defendant JIANG sent

6    defendant SONG an electronic message containing a screenshot of a

7    conversation that defendant JIANG had with an Apple customer service

8    representative regarding a fraudulent return of a counterfeit Apple

9    device.

10      Overt Act No. 17:   On April 1, 2017, defendant SONG responded

11   to defendant JIANG's screenshot of a conversation with Apple customer

12   service representative and told defendant JIANG to change the address

13   used for the transaction.

14      Overt Act No. 18:   On April 6, 2017, defendant XING submitted

15   an online repair request for a counterfeit iPhone and listed his

16   mailing address as mailbox "#450#" at a UPS Store in Fountain Valley,

17   California.

18      Overt Act No. 19:   On April 21, 2017, defendant SONG submitted

19   an online repair request for a counterfeit iPhone and listed his

20   mailing address with the incorrect spelling of the street address and

21   the mailbox as mailbox "#119#" at a U.S. Post Office in Walnut,

22   California.

23      Overt Act No. 20:   On July 3, 2017, defendants SONG and XING

24   closed two rented mailboxes at a U.S. Post Office in Walnut,

25   California.

26      Overt Act No. 21:   On May 1, 2018, defendant JIANG fraudulently

27   returned a counterfeit iPhone at the Apple Los Cerritos store in

28   Cerritos, California.

Overt Act No. 22:   On May 31, 2018, defendant SONG visited the Apple website from his residence in Corona, California, and made eight Apple Genius Bar appointments to fraudulently return counterfeit iPhones.

Overt Act No. 23:   On June 9, 2018, defendant LIN visited the Apple website from her residence in Corona, California, and made six Apple Genius Bar appointments to fraudulently return counterfeit iPhones.

Overt Act No. 24:   On July 14, 2018, defendant SONG fraudulently returned a counterfeit iPhone at the Apple Northridge store in Northridge, California.

Overt Act No. 25:   On July 14, 2018, defendant JIANG fraudulently returned and attempted to return three counterfeit iPhones at Apple stores within the Central District of California.

Overt Act No. 26:   On September 30, 2018, defendant JIANG sent an electronic message to an unknown co-conspirator indicating that he did not control when he received counterfeit Apple devices, stating that the bosses gave him the devices when they arrived.

Overt Act No. 27:   On October 3, 2018, defendant JIANG told an unknown co-conspirator to walk into an Apple store and attempt to repair, that is, fraudulently return, three counterfeit Apple devices for genuine Apple devices.

Overt Act No. 28:   On October 3, 2018, the unknown co-conspirator asked defendant JIANG if the unknown co-conspirator should use his own name for the return of the Apple devices.

Overt Act No. 29:   On October 3, 2018, defendant JIANG and an unknown co-conspirator complained to each other via electronic messages that Apple store employees were openly questioning their

multiple attempted returns of counterfeit Apple devices, with defendant JIANG complaining that Apple employees were very vigilant against them now.

Overt Act No. 30:   On December 28, 2018, defendant HU fraudulently returned a counterfeit iPhone at the Apple Sherman Oaks store in Sherman Oaks, California.

Overt Act No. 31:   On January 22, 2019, defendant SONG fraudulently returned a counterfeit iPhone at the Apple Los Cerritos store in Cerritos, California.

Overt Act No. 32:   On January 26, 2019, defendants LIN and XING fraudulently returned four counterfeit iPhones at the Apple Victoria Gardens store in Rancho Cucamonga, California.

Overt Act No. 33:   On February 28, 2019, defendant HU sent an electronic message to an individual indicating that she received $5 for every counterfeit Apple device that other co-conspirators fraudulently returned to Apple stores.

Overt Act No. 34:   On March 5, 2019, defendant LIN fraudulently returned a counterfeit iPhone at the Apple Los Cerritos store in Cerritos, California.

Overt Act No. 35:   On March 8, 2019, defendants LIN and XING fraudulently returned a counterfeit iPhone at the Apple South Coast Plaza store in Costa Mesa, California.

Overt Act No. 36:   On March 21, 2019, defendants LIN and XING fraudulently returned a counterfeit iPhone at the Apple Fashion Island store in Newport Beach, California.

Overt Act No. 37:   On January 10, 2020, defendant LIN visited the Apple website from her residence in Corona, California, and made

14

three Apple Genius Bar appointments to fraudulently return counterfeit iPhones.

Overt Act No. 38:   On January 21, 2020, defendant XING visited three different Apple Stores in Costa Mesa, Newport Beach, and Cerritos, California, where he fraudulently returned counterfeit iPhones.

Overt Act No. 39:   On May 12, 2021, defendants JIANG and HU discussed returning counterfeit Apple watches.

Overt Act No. 40:   On August 29, 2021, defendant HU filled out an application for mail to be delivered to mailbox "249" at a private business in San Gabriel, California.

Overt Act No. 41:   On December 16, 2021, defendant SONG visited five different Apple stores in Brea, Cerritos, Manhattan Beach, Los Angeles, and Beverly Hills, California, where he fraudulently returned and attempted to return a total of six counterfeit Apple devices.

Overt Act No. 42:   On June 9, 2022, defendant SONG visited six different Apple stores in Los Angeles, Beverly Hills, Manhattan Beach, Pasadena, and Glendale, California, where he fraudulently returned and attempted to return a total of ten counterfeit Apple devices.

Overt Act No. 43:   On September 23, 2022, defendant SONG visited six different Apple stores in Pasadena, Glendale, Los Angeles, Beverly Hills, Cerritos, Costa Mesa, and Irvine, where he fraudulently returned and attempted to return counterfeit Apple devices.

1    Overt Act No. 44:   On November 16, 2022, defendant JIANG
2 fraudulently returned two counterfeit iPads at the Apple Century City
3 store in Los Angeles, California.

4    Overt Act No. 45:   On November 16, 2022, defendant SONG
5 fraudulently returned a counterfeit iPhone at the Apple Brea Mall
6 store in Brea, California.

7    Overt Act No. 46:   On November 16, 2022, defendant HU
8 fraudulently returned a counterfeit iPad at the Apple The Americana
9 at Brand store in Glendale, California.

10    Overt Act No. 47:   On December 2, 2022, defendant JIANG sent an
11 electronic message to defendant HU that a person described in
12 Mandarin Chinese as the "second boss" instructed them to stop
13 visiting the Apple The Grove store in Los Angeles, California,
14 because the store changed its policy and only permitted one
15 appointment per person per day, and because certain Apple store
16 employees were openly questioning defendants' repeated visits to the
17 Apple store.

18    Overt Act No. 48:   On December 7, 2022, defendant SONG
19 fraudulently returned a counterfeit iPhone at the Apple Pasadena
20 store in Pasadena, California.

21    Overt Act No. 49:   On December 8, 2022, defendants JIANG and HU
22 agreed to not visit a particular Apple store after an Apple employee
23 rejected defendant HU's attempted return of a counterfeit iPad, with
24 defendant HU telling defendant JIANG that the employee told defendant
25 HU that the Apple logo on the back of her iPad reflected light
26 differently than other iPads.

27    Overt Act No. 50:   On December 8, 2022, defendant HU
28 fraudulently returned a counterfeit iPad, filled with metal weights

16

1   inside to mimic the weight of a genuine iPad, at the Apple The

2   Americana at Brand store in Glendale, California

3      Overt Act No. 51:   On December 8, 2022, defendant SONG

4   instructed defendant HU to attempt to fraudulently return previously

5   rejected counterfeit Apple devices at Best Buy rather than Apple

6   stores because Best Buy would not track returns of counterfeit Apple

7   devices previously attempted at Apple stores.

8      Overt Act No. 52:   On December 8, 2022, defendant HU sent an

9   electronic message to defendant JIANG about the second boss directing

10   her to fraudulently return counterfeit Apple devices at Best Buy.

11      Overt Act No. 53:   On December 9, 2022, defendant JIANG

12   fraudulently returned a counterfeit iPad, filled with metal weights

13   inside to mimic the weight of a genuine iPad, at the Apple Manhattan

14   Village store in Manhattan Beach, California.

15      Overt Act No. 54:   On December 9, 2022, defendant SONG

16   fraudulently returned a counterfeit iPad, filled with metal weights

17   inside to mimic the weight of a genuine iPad, at the Apple Brea Mall

18   store in Brea, California.

19      Overt Act No. 55:   On December 12, 2022, defendants HU and

20   JIANG discussed an Apple store employee rejecting their recent

21   attempts to fraudulently return counterfeit Apple devices and how

22   their boss would be angry.

23      Overt Act No. 56:   On December 12, 2022, defendant HU

24   fraudulently returned a counterfeit iPad at the Apple Brea Mall store

25   in Brea, California.

26      Overt Act No. 57:   On January 7, 2023, defendants HU and

27   discussed a person described in Mandarin Chinese as their "big boss"

28   via electronic messages and defendant JIANG said that he had never

been in contact with him, but that the boss was from Huaqiangbei, China, and had many family businesses.

Overt Act No. 58:   On January 8, 2023, defendant HU sent an electronic message to defendant JIANG that she was able to fraudulently return a counterfeit iPad at the Apple Beverly Center store in Los Angeles, California, despite it looking fake to her.

Overt Act No. 59:   On January 8, 2023, defendant JIANG fraudulently returned and attempted to return ten counterfeit Apple devices to multiple Apple stores within the Central District of California.

Overt Act No. 60:   On January 9, 2023, defendants JIANG and HU discussed with each other via electronic messages how Apple store employees were annoyed with them after an Apple store manager asked a lot of questions about their repeated returns at the Apple store.

Overt Act No. 61:   On January 10, 2023, defendant HU sent an electronic message to defendant SONG indicating that the Apple Manhattan Village store in Manhattan Beach, California, rejected her fraudulent return of a counterfeit Apple device.

Overt Act No. 62:   On January 11, 2023, defendants HU and JIANG exchanged electronic messages about seeing other unknown co-conspirators, who worked for their big boss, making returns at Apple stores.

Overt Act No. 63:   On May 10, 2023, defendant SONG attempted to fraudulently return a counterfeit Apple device, that an Apple employee had previously rejected several days earlier, at the Apple Victoria Gardens store in Rancho Cucamonga, California.

Overt Act No. 64:   On October 7, 2023, defendant SONG attempted to fraudulently return a counterfeit Apple device, that defendant

JIANG had previously attempted to return, at the Apple Fashion Island store in Newport Beach, California.

Overt Act No. 65:   On October 26, 2023, defendant JIANG visited eight different Apple stores within the Central District of California, where he fraudulently returned and attempted to return counterfeit iPads.

Overt Act No. 66:   On October 27, 2023, defendant SONG visited six different Apple stores within the Central District of California, where he fraudulently returned and attempted to return counterfeit iPads.

Overt Act No. 67:   On November 25, 2023, defendant SONG visited ten different Apple stores within the Central District of California, where he fraudulently returned and attempted to return fourteen counterfeit Apple devices.

Overt Act No. 68:   On December 27, 2023, defendant JIANG fraudulently returned and attempted to return five counterfeit Apple devices online and at Apple stores within the Central District of California.

Overt Act No. 69:   On February 8, 2024, defendant SONG visited Apple stores in Los Angeles, Newport Beach, Brea, and Rancho Cucamonga, California, where he fraudulently returned and attempted to return five counterfeit Apple devices.

Overt Act No. 70:   On March 12, 2024, defendant SONG visited the Apple Victoria Gardens store in Rancho Cucamonga, California, where he fraudulently attempted to return a counterfeit Apple device.

<u>COUNT TWO</u>

[18 U.S.C. §§ 1028A(a)(1), 2(a)]

[ALL DEFENDANTS]

Beginning on an unknown date but no later than December 18, 2015, and continuing through at least March 12, 2024, in Los Angeles, San Bernardino, Riverside, and Orange Counties, within the Central District of California, and elsewhere, defendants YANG SONG, JUNWEI JIANG, ZHENGXUAN HU, YUSHAN LIN, and SHUYI XING, each aiding and abetting each other, knowingly transferred, possessed, and used, without lawful authority, and willfully caused another person to knowingly transfer, possess, and use, without lawful authority, means of identification that defendants knew belonged to other persons, namely, international mobile equipment identity numbers of real Apple iPhone and iPad owners, during and in relation to the offense of conspiracy to commit wire fraud and mail fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

COUNTS THREE THROUGH NINE

[18 U.S.C. § 1343]

[ALL DEFENDANTS]

The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 7 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

A.   THE SCHEME TO DEFRAUD

1.   Beginning on an unknown date but no later than December 18, 2015, and continuing through at least March 12, 2024, in Los Angeles, San Bernardino, Riverside, and Orange Counties, within the Central District of California, and elsewhere, defendants YANG SONG ("SONG"), JUNWEI JIANG ("JIANG"), ZHENGXUAN HU ("HU"), YUSHAN LIN ("LIN"), and SHUYI XING ("XING"), and other persons known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Apple as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

2.   The scheme operated, in substance, as set forth in paragraph 2 of Count One of this Indictment, which is realleged and incorporated herein by reference as if set forth in full.

B.   USE OF INTERSTATE WIRES

3.   On or about the following dates, in the Central District of California, and elsewhere, defendants SONG, JIANG, HU, LIN, and XING, for the purpose of executing the above-described scheme to defraud, transmitted and willfully caused the transmission of the following items by means of wire and radio communication in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|-------|------|------------------------------|
| THREE | 11/20/2019 | Email from Apple to defendant XING's Yahoo email account, relating to defendant XING's drop-off of an iPhone (Apple Repair ID R436984491), at the Apple Los Cerritos store in Cerritos, California |
| FOUR | 12/3/2019 | Email from Apple to defendant SONG's Yahoo email account, relating to defendant SONG's drop-off of an iPhone (Apple Repair ID R438396805), at the Apple South Coast Plaza store in Costa Mesa, California |
| FIVE | 7/22/2021 | Email from Apple to defendant SONG's Yahoo email account, relating to defendant SONG's drop-off of an iPad (Apple Repair ID R501125497), at the Apple Manhattan Village store in Manhattan Beach, California |
| SIX | 9/23/2022 | Email from Apple to defendant SONG's Yahoo email account, relating to defendant SONG's drop-off of an iPod (Apple Repair ID R553161165), at the Apple Irvine Spectrum store in Irvine, California |
| SEVEN | 11/17/2022 | Email from Apple to defendant HU's Google email account, relating to defendant HU's drop-off of an iPad (Apple Repair ID R560915547), at the Apple The Grove store in Los Angeles, California |
| EIGHT | 12/8/2022 | Email from Apple to defendant HU's Google email account, relating to defendant HU's drop-off of an iPad (Apple Repair ID R563369917), at the Apple The Americana at Brand store in Glendale, California |
| NINE | 1/11/2023 | Email from defendant HU's Google email account to defendant JIANG's Microsoft email account, relating to defendant HU's drop-off of an iPad (Apple Repair ID R566490299), at the Apple Fashion Island store in Newport Beach, California |

1            COUNTS TEN THROUGH TWENTY-ONE

2               [18 U.S.C. § 1341]

3               [ALL DEFENDANTS]

4        The Grand Jury hereby realleges and incorporates by reference

5   paragraphs 1 through 7 of the Introductory Allegations and

6   Definitions of this Indictment as though fully set forth herein.

7   A.    THE SCHEME TO DEFRAUD

8        1.    Beginning on an unknown date but no later than December 18,

9   2015, and continuing through at least March 12, 2024, in Los Angeles,

10  San Bernardino, Riverside, and Orange Counties, within the Central

11  District of California, and elsewhere, defendants YANG SONG ("SONG"),

12  JUNWEI JIANG ("JIANG"), ZHENGXUAN HU ("HU"), YUSHAN LIN ("LIN"), and

13  SHUYI XING ("XING"), and other persons known and unknown to the Grand

14  Jury knowingly and with intent to defraud, devised, participated in,

15  and executed a scheme to defraud Apple as to material matters, and to

16  obtain money and property by means of material false and fraudulent

17  pretenses, representations, and promises, and the concealment of

18  material facts.

19       2.    The scheme operated, in substance, as set forth in

20  paragraph 2 of Count One of this Indictment, which is realleged and

21  incorporated herein by reference as if set forth in full.

22  B.    USE OF THE MAILS

23       3.    On or about the following dates, in Los Angeles, San

24  Bernardino, Riverside, and Orange Counties, within the Central

25  District of California, and elsewhere, defendants SONG, JIANG, HU,

26  LIN, and XING, for the purpose of executing the above-described

27  scheme to defraud, deposited and caused to be deposited and to be

28  sent and delivered by a private and commercial interstate carrier,

and knowingly caused to be delivered by such carrier according to the directions thereon, the following items:

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| TEN | 6/4/2019 | A FedEx package, bearing FedEx Tracking Number 101911346001, containing a genuine replacement iPhone (Apple Repair ID R419283235), that was shipped from Apple to defendant XING at a UPS Store in Corona, California |
| ELEVEN | 6/5/2019 | A FedEx package, bearing FedEx Tracking Number 101911376633, containing a genuine replacement iPhone (Apple Repair ID R419282523), that was shipped from Apple to defendant LIN at a UPS Store in Corona, California |
| TWELVE | 8/29/2019 | A FedEx package, bearing FedEx Tracking Number 119431684055, containing a genuine replacement iPhone (Apple Repair ID R433951570), that was shipped from Apple to defendant XING at a UPS Store in Corona, California |
| THIRTEEN | 9/20/2021 | A FedEx package, bearing FedEx Tracking Number 531855622285, containing a genuine replacement iPad (Apple Repair ID R507863167), that was shipped from Apple to defendant JIANG at a UPS Store in San Gabriel, California |
| FOURTEEN | 11/16/2022 | A FedEx package, bearing FedEx Tracking Number 615184082266, containing a genuine replacement iPad (Apple Repair ID R560811657), that was shipped from Apple to defendant HU at defendant HU's residence in Alhambra, California |
| FIFTEEN | 12/7/2022 | A FedEx package, bearing FedEx Tracking Number 615184257205, containing a genuine replacement iPad (Apple Repair ID R563127201), that was shipped from Apple to defendant HU at defendant HU's residence in Alhambra, California |
| SIXTEEN | 12/9/2022 | A FedEx package, bearing FedEx Tracking Number 614658610388, containing a genuine replacement iPad (Apple Repair ID R563496767), that was shipped from Apple to defendant JIANG at a UPS store in San Gabriel, California |

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| SEVENTEEN | 12/29/2022 | A FedEx package, bearing FedEx Tracking Number 621290822049, containing a genuine replacement iPad (Apple Repair ID R565427913), that was shipped from Apple to defendant SONG at a UPS store in Corona, California |
| EIGHTEEN | 12/31/2022 | A FedEx package, bearing FedEx Tracking Number 621290854011, containing a genuine replacement iPad (Apple Repair ID R565554515), that was shipped from Apple to defendant JIANG at a UPS store in San Gabriel, California |
| NINETEEN | 1/11/2023 | A FedEx package, bearing FedEx Tracking Number 619490072460, containing a genuine replacement iPad (Apple Repair ID R564735063), that was shipped from Apple to defendant HU at a UPS Store in San Gabriel, California |
| TWENTY | 1/12/2023 | A FedEx package, bearing FedEx Tracking Number 628056578882, containing a genuine replacement iPad (Apple Repair ID R566798037), that was shipped from Apple to defendant SONG at a UPS Store in Corona, California |
| TWENTY-ONE | 9/6/2023 | A FedEx package, bearing FedEx Tracking Number 704643881775, containing a genuine replacement iPad (Apple Repair ID R595039663), that was shipped from Apple to defendant SONG at defendant SONG's residence in Corona, California |

1

COUNT TWENTY-TWO

2

[18 U.S.C. § 2320(a)(1)]

3

[ALL DEFENDANTS]

4   The Grand Jury hereby realleges and incorporates by reference

5  paragraphs 1 through 7 of the Introductory Allegations and

6  Definitions of this Indictment as though fully set forth herein.

7  A.   OBJECT OF THE CONSPIRACY

8        1.   Beginning on an unknown date but no later than December 18,

9  2015, and continuing through at least March 12, 2024, in Los Angeles,

10  San Bernardino, Riverside, and Orange Counties, within the Central

11  District of California, and elsewhere, defendants YANG SONG, JUNWEI

12  JIANG, ZHENGXUAN HU, YUSHAN LIN, and SHUYI XING intentionally

13  conspired and agreed with one another, and with other persons known

14  and unknown to the Grand Jury, to intentionally traffic in goods and

15  knowingly use a counterfeit mark on or in connection with such goods,

16  in violation of Title 18, United States Code, Section 2320(a)(1).

17  B.   MANNER AND MEANS OF THE CONSPIRACY

18        2.   The object of the conspiracy was to be accomplished, in

19  substance, as follows:

20            a.   The Grand Jury realleges paragraphs 2.a through 2.g of

21  Count One of this Indictment as though fully set forth herein.

22  C.   OVERT ACTS

23        3.   On or about the following dates, in furtherance of the

24  conspiracy and to accomplish its object, defendants SONG, JIANG, HU,

25  LIN, and XING, and others known and unknown to the Grand Jury,

26  committed and willfully caused others to commit the following overt

27  acts, among others, in the Central District of California, and

28  elsewhere:

<u>Overt Act Nos. 1-70</u>:  The Grand Jury realleges and incorporates Overt Act Number 1 through Overt Act Number 70 of Section C of Count One of this Indictment as though fully set forth herein.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of any of the offenses set forth in Counts One through Twenty-One of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

<u>FORFEITURE ALLEGATION TWO</u>

[18 U.S.C. § 2323(b) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 2323(b) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Twenty-Two of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any article made or trafficked in violation of 18 U.S.C. § 2320;

(b)   All right, title, and interest in any property used, or intended to be used, in any manner or part to commit or facilitate the commission of an offense referred to in subparagraph (a);

(c)   All right, title, and interest in any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of an offense referred to in subparagraph (a); and

(d)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the

preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
Foreperson

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

KHALDOUN SHOBAKI
Assistant United States Attorney
Chief, Cyber & Intellectual
Property Crimes Section

LAUREN E. RESTREPO
Deputy Chief, Cyber &
Intellectual Property Crimes
Section

ANDREW M. ROACH
Assistant United States Attorney
Cyber & Intellectual Property
Crimes Section