TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0306
E-mail: andrew.roach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YUSHAN LIN,<br><br>Defendant. | No. 2:24-CR-00331-AB-4<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT YUSHAN LIN<br><br>Hearing Date: July 24, 2026<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom 7B |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Andrew M. Roach, hereby files its sentencing position for defendant Yushan Lin.

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 10, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

*/s/ Andrew M. Roach*
ANDREW M. ROACH
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Yushan Lin pleaded guilty to conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349, for her role in a global scheme to defraud Apple, Inc. through the fraudulent return of counterfeit Apple devices for new Apple devices. Over the course of her involvement in the conspiracy, defendant and her codefendant and long-term boyfriend partner Shuyi Xing returned over 1,500 counterfeit Apple devices to Apple stores, causing Apple actual losses of over $1.1 million. Defendant promptly pleaded guilty and now must be sentenced.

The government agrees with the Presentence Report's (PSR) calculation of defendant's total offense level of 20 and a criminal history category of I. Defendant's resulting Sentencing Guidelines are 33 to 41 months' imprisonment.

The government respectfully requests the Court sentence defendant to the low end of the Guidelines, 33 months' imprisonment, followed by three years of supervised release, and order defendant to pay $16,239,254 in restitution to Apple, which is to be jointly and severally liable with the other co-conspirators, and a special assessment of $100.

## II. STATEMENT OF FACTS[1]

Between 2015 and continuing through at least May 30, 2024, in Los Angeles, San Bernardino, Riverside, and Orange Counties, within the Central District of California, defendant intentionally conspired and agreed with codefendants Yang Song, Shuyi Xing, and others, to

---

[1] These facts are largely from the agreed-upon factual basis in defendant's plea agreement or PSR (Dkt. 155, 222).

commit wire and mail fraud, by importing counterfeit Apple iPhones, iPads, AirPods, and other devices into the United States where they were then fraudulently returned for genuine Apple products through Apple's warranty programs. While the conspiracy lasted through the date of the indictment, most of defendant's and codefendant Xing's fraudulent returns occurred before the Covid-19 pandemic, although the Apple data shows that defendant continued to make a handful of fraudulent returns in 2021 and one in 2023.

In furtherance of the scheme, co-conspirators coordinated with co-conspirators in China to ship counterfeit Apple iPhones, iPads, AirPods, and other devices to defendant and various co-conspirators in the United States. The counterfeit Apple devices shipped to the United States were designed to look like genuine Apple devices and included counterfeit identification numbers (international mobile equipment identity ("IMEI") and/or serial numbers) matching genuine identification numbers on real Apple devices that had been sold in the United States and Canada, were owned by real persons, and were under warranty through Apple's manufacturer warranty or AppleCare+.

These counterfeit Apple devices contained various counterfeit marks identical with or substantially indistinguishable from legitimate Apple-registered trademarks, such as Trademark number 3,679,056, which registered the Apple logo design mark, Trademark number 3,928,818, which registered the Apple standard character mark, Trademark number 3,669,402, which registered the Apple iPhone standard character mark, and Trademark number 4,537,934, which registered the Apple iPad standard character mark. These counterfeit marks were deliberately affixed to the counterfeit Apple products to cause confusion, mistake, and deceive Apple and consumers.

To receive the counterfeit Apple products from China, defendant along with her various co-conspirators rented mailboxes at numerous U.S. Post Offices, United Parcel Service Stores, and other commercial mailbox rental businesses throughout the Central District of California. Co-conspirators in China then mailed the counterfeit Apple devices to these addresses. Once the co-conspirators received the counterfeit Apple devices, the co-conspirators then provided the counterfeit Apple devices to defendant and other co-conspirators who then fraudulently returned the counterfeit Apple iPhones, iPads, AirPods, and other devices to Apple as if the counterfeit Apple devices they returned were genuine Apple devices that had been legitimately purchased and were eligible for Apple's warranty programs and that defendant and the co-conspirators were the lawful possessors of the real Apple devices bearing the IMEI and/or serial numbers that were on the counterfeit Apple devices.

Defendant and her co-conspirators fraudulently represented that the counterfeit Apple devices they returned were genuine Apple devices that were broken or non-operational and therefore were covered by Apple's warranty programs. Defendant and her co-conspirators, however, knew that the devices they returned were counterfeit Apple devices and not covered by Apple's warranty programs and that the real Apple devices bearing the IMEI and/or serial numbers listed on the counterfeit devices were owned by real people. Defendant and her co-conspirators made such representations with the intent to defraud, because they knew that Apple would replace or repair the counterfeit Apple devices with genuine Apple devices or parts based on these false representations, and Apple did, in fact, replace or repair these counterfeit Apple devices based on

the fraudulent representations that defendant and her co-conspirators made to Apple.

Defendant processed multiple service requests for counterfeit Apple devices on a given day, and sometimes visited multiple Apple stores throughout the Central District of California in a single day, where she fraudulently returned and attempted to return the counterfeit Apple devices for genuine Apple devices. During some of her in-store visits, Apple sometimes replaced or repaired the counterfeit Apple device with a genuine Apple device during the same visit. On other occasions, Apple did not replace or repair the counterfeit Apple device during the store visit. In those cases, Apple either took the counterfeit Apple device during an in-store visit or directed the defendant or co-conspirators to mail the counterfeit Apple device directly to Apple repair centers. Apple then shipped, via a private and commercial interstate carrier, a genuine replacement Apple device or a repaired device to either the Apple store, where defendant or a co-conspirator returned to pick up the replacement Apple device, or to the co-conspirators at their various mailboxes throughout the Central District of California.

After defendant and her co-conspirators fraudulently returned the counterfeit Apple devices for genuine Apple devices, defendant gave the genuine Apple devices to various co-conspirators. These co-conspirators then shipped or caused to be shipped these genuine Apple devices to co-conspirators in the United States and abroad, primarily in China, where the genuine Apple devices were resold at a substantial profit. Defendant received a commission of $10 to $50 for each counterfeit Apple device that she fraudulently returned to Apple.

Over the course of the conspiracy, defendant and codefendant Shuyi Xing personally fraudulently returned and attempted to return at least 1,584 counterfeit Apple devices to Apple, causing at least $1,116,544 in actual losses to Apple, and the larger conspiracy fraudulently returned and attempted to return over 27,645 counterfeit Apple devices, causing at least $16,239,254 in actual losses to Apple.

## III. PRESENTENCE REPORT AND GUIDELINES CALCULATION

The government agrees with the information in the PSR, filed on June 16, 2026 (Dkt. 222), and concurs with the Guidelines calculation as calculated below:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics: | | |
| - Loss amount between $550,000 and $1.5 million | +14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| - Substantial part of scheme committed outside of the United States / sophisticated means | +2 | U.S.S.G. § 2B1.1(b)(10)(B), (C) |
| - Offense involved the production / trafficking of any unauthorized access or counterfeit device | +2 | U.S.S.G. § 2B1.1(b)(11)(B)(i) |
| Adjusted Offense Level | 25 | |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 |
| Zero-Point Offender Adjustment | -2 | U.S.S.G. § 4C1.1 |
| **Total Offense Level** | **20** | |

Defendant has zero criminal history points and is therefore in criminal history category I. (PSR ¶ 64.) Defendant's resulting Guidelines are 33 to 41 months' imprisonment.

Probation recommends the Court impose a sentence of 24 months, amounting to a three-level variance from the Guidelines. (Dkt. 221.) Probation also recommends the Court order defendant to pay restitution to Apple in the amount of $16,239,254 -- the actual loss amount Apple sustained as a result of the conspiracy -- including a partial payment of $100,000 to be paid within 90 days from judgment.

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends defendant be sentenced to the low end of the advisory Guidelines, 33 months' imprisonment (two years and nine months), followed by three years of supervised release, and ordered to pay $16,239,254 in restitution (including the partial payment of $100,000), and the special assessment of $100. This recommendation is sufficient, but not greater than necessary, to achieve the factors in 18 U.S.C. § 3553(a), namely, the nature and circumstances of the offense, the history and characteristics of defendant, and the need for the sentence to reflect the seriousness of the offense and to afford adequate deterrence to criminal conduct.

### A. Nature and Circumstances of the Offense and the History and Characteristics of Defendant

First, the nature and circumstances of the offense demand a custodial sentence. See 18 U.S.C. § 3553(a)(1). Defendant was a significant player in an organized scheme to defraud Apple, one of the most respected and well-protected brands in the world. Defendant and her boyfriend/codefendant Xing were early players in this conspiracy, and are known to have been involved since the beginning

of the scheme in 2015 and 2016. Defendant and codefendant Xing even rented some of the initial mailboxes used for returns. Defendant and codefendant Xing were very active between 2015 through 2020, returning over 1,500 devices.[2] While their activity in the conspiracy waned after the Covid-19 pandemic, and they appeared to essentially stop making fraudulent returns (or at least, leave fewer traces that could be tracked), they continued to live with codefendant Yang Song (the number one fraudulent returner in this ring) and associate with related defendant Wenhui Huang (the ringleader).

Notwithstanding the fact that defendant's activity may have lessened in recent years before her arrest, defendant's and codefendant Xing's involvement in the fraud was still sustained and prolonged. They personally returned at least 1,500 counterfeit Apple devices, causing nearly $1.1 million in actual losses to Apple. Defendant was instrumental in the beginning, even renting multiple mailboxes to help further the fraud. Defendant and codefendant Xing's sustained fraud against Apple, one of America's most iconic companies and brands, and one that helps cement American soft power throughout the world, is a serious crime. Defrauding Apple through the misuse of its warranty policies and fraudulent use of its trademarks and intellectual property erodes its brand value, increases costs to consumers, makes legitimate returns for consumers more difficult and time consuming, and fosters criminal activity in

[2] Defendant's and Xing's fraudulent returns are considered jointed because surveillance video from Apple stores indicated that both defendant and Xing returned many devices together. Accordingly, because of this and their relationship status, it is best to view their conduct together for purposes of the Apple fraud.

both the United States (where the counterfeit goods are returned) and China (where the counterfeit goods are made). Playing a part in such a conspiracy and committing a sustained fraud on Apple's trademarks and intellectual property are crimes deserving of a custodial sentence.

On the other side of the equation, the government views defendant as one of the least culpable defendant -- if not, the least culpable defendant -- this Court will sentence among all six defendants in this scheme. The government recognizes that defendant did not act alone in this conspiracy and she played a lessor role in the conspiracy than others, including codefendant Xing. Defendant also appeared to largely stop making fraudulent returns to Apple in the years before her arrest (unlike defendants Song, Jiang, and Hu, who were still returning devices in the year before their arrests), however, she, at minimum, was still aware of the fraud given that she lived with codefendant Yang Song, the most prolific fraudulent returner of the ring. And to her credit, or potentially codefendant Xing's desire to shield defendant from additional risk, defendant is not known to have participated in the separate money laundering scheme like codefendant Xing.

Beyond her lesser culpability, there is the consideration of defendant's minor daughter who she shares with codefendant Xing. Their daughter will likely bear unintended consequences of both her parents' incarceration. This is why the government is recommending the low end of an already lenient Guidelines calculation. Here, the overall scope and loss amount of the conspiracy is large, over 27,645 counterfeit devices returned that caused actual losses of over $16,239,254 to Apple. While defendant could be held vicariously

liable for additional losses of the conspiracy under United States v. Pinkerton, 328 U.S. 640 (1946), the government recommends a more measured and fair approach: Defendant should be held to account for the specific loss amount attributed to her direct conduct, i.e., those fraudulent returns she and codefendant Xing directly made. That loss still amounts to nearly $1.1 million and that alone is significant and deserving of a prison sentence. Had defendant been held to account for the full actual loss of the conspiracy ($16.2 million), defendant's total offense level would be six levels higher, an offense level of 26, with corresponding Guidelines of 63 to 78 months. While the government does not recommend a sentence that high in light of the other § 3553(a) factors, the government's recommended sentence is already a concession and it cuts against any further variance from an already lenient Guidelines range.[3]

**B. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence**

The government's recommended 33-month sentence also appropriately accounts for the other sentencing factors. This sentence reflects the seriousness of defendant's offense. Such a sentence will also instill in defendant a respect for the law.

A custodial sentence is also necessary for deterrence. Defendant has no prior criminal history and is unlikely to reoffend. Accordingly, specific deterrence is not a particular concern. General deterrence, however, is important and it demands a sentence.

[3] Another factor weighing against any variance is that the loss amount is already reduced because it is only Apple's actual loss, and it does not include any of defendant's attempted returns of counterfeit devices that Apple rejected after discovering the device was counterfeit.

The production and importation of counterfeit goods diminish the hard-earned value associated with premium American brands, such as Apple, and is a serious concern. Apple is one of the most valuable companies in the world, and it is uniquely American, having been founded in Northern California. It has influenced both America and the world and changed the shape of technology worldwide. Apple's influence on technology and consumer behavior around the world is a testament to American engineering, creativity, and ingenuity. But a company like Apple can only change the world if its trademarks and intellectual property are protected. And that is what criminal and civil intellectual property laws are designed to do: Protect and enforce the rights of creators like Apple to encourage the continued development of such technologies.

With these important policy considerations in mind, a custodial sentence is appropriate to demonstrate to other would-be counterfeiters that the United States is not a place for them to send their counterfeit wares and to send a message that such crimes will be prosecuted to the fullest extent of the law. At the same time, however, the Court should remain mindful that co-conspirators in China are likely to escape justice while reaping proceeds of the fraud. This defendant need not be punished excessively to achieve general deterrence and therefore the government recommends a low-end sentence to accomplish these aims.

**C. Unwarranted Sentencing Disparity**

Finally, § 3553(a)(6) requires the Court to impose a sentence to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. United States v. Goff, 501 F.3d 250, 258 (3d Cir. 2007) ("Part of 'just punishment'

is the avoidance of unwarranted sentencing disparities"). A sentence within the Guidelines range is usually the best way to avoid sentencing disparities. United States v. Mares, 402 F.3d 511, 518-19 (5th Cir. 2005).

The government recommends a Guidelines sentence here because it is the best way to avoid an unwarranted sentencing disparity.

**D. Three Years of Supervised Release is Appropriate**

The government recommends the Court impose the three years of supervised release. Such supervision is essential to ensure that defendant remains on a law-abiding path and to protect the public should defendant stray.

**E. Fine and Special Assessment**

The government does not recommend the imposition of a fine because defendant has established that she is unable to pay and is unlikely to able to pay any fine in the future. However, a special assessment of $100 is mandatory.

**F. Restitution**

The government recommends the Court order defendant to pay $16,239,254 in restitution to Apple, including the partial payment of $100,000, as Probation recommends, based on the approximately $500,000 in equity that defendant has in the residence she co-owns with codefendant Xing. (PSR ¶¶ 97, 103.)[4]

---

[4] As the PSR indicates, defendant and co-defendant Xing purchased their residence in 2018, during the height of their activity in the fraud, and codefendant Song provided them money to assist with the purchase, see PSR ¶¶ 130, 39. Accordingly, proceeds of the fraud were likely used to purchase their residence. It is therefore appropriate that a partial payment of $100,000 be ordered, even if it comes at the expense of the equity in defendant's home.

This restitution amount is larger than the amount directly attributable to defendant's conduct or what could be imputed to her as relevant conduct, but this higher amount -- reflecting Apple's actual loss -- is warranted under the law. "Where a defendant is convicted of conspiracy, the Mandatory Victims Restitution Act (MVRA) authorizes a district court to hold the defendant jointly and severally liable, . . . for all [victims] harmed by the entire scheme." United States v. Dadayan, 76 F.4th 955, 958 (9th Cir. 2023) (permitting restitution amount different than Guidelines loss amount) (holding district court did not err by imposing restitution in full amount for loss from conspiracy on particular defendant) (emphasis in original) (citations omitted); United States v. Newsome, 322 F.3d 328, 338 (4th Cir. 2003) ("district court's observation that the determinations of the losses for the proper offense level and for ordering restitution present different questions" is in accordance with the law). This is because "the MVRA does not focus on "relevant conduct" as defined by the Sentencing Guidelines but rather on the 'offense of conviction' when describing the losses subject to a restitution order." Newsome, 322 F.3d at 341.

Under the MVRA, 18 U.S.C. § 3663A, a sentencing court shall order "defendant [to] make restitution to the victim of the offense." The MVRA further defines "victim" to mean a person who is "directly and proximately harmed as a result of the commission of an offense." Id. § 3663A(a)(2).[5] Under the statute, restitution is

[5] The Dictionary Act defines person to includes corporations, 1 U.S.C. § 1, and courts have interpreted the MVRA to include both corporations and the government as victims. United States v. Ekanem, 383 F.3d 40, 42-43 (2d Cir. 2004).

mandatory "in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense" and defendant is required to "pay an amount equal to ... the value of the property." Id. § 3663A(b). Accordingly, under the MVRA, each member of a conspiracy that in turn causes property loss to a victim is responsible for the loss caused by the offense. "[T]he MVRA requires that a court enter an order of full restitution when the loss is caused by a property offense, and the focus of the court in applying the MVRA must be on the losses to the victim caused by the offense." Newsome, 322 F.3d at 341 (holding co-conspirator responsible for all losses conspiracy caused, not just losses incurred while he was involved (which were lower), and holding this approach comports with legislative intent to fully compensate victims) (emphases in original); see United States v. Laney, 189 F.3d 954, 964-66 (9th Cir. 1999) (holding that for purposes of ordering restitution under a comparable statute, losses caused by a conspiracy include "not only those resulting from the defendant's individual actions, but also others caused by the conspiracy itself"). This is because "Congress intended restitution to be tied to the loss caused by the offense of conviction," not defendant's personal participation. Hughey v. United States, 495 U.S. 411, 418, (1990).

In Newsome, for example, four defendants were convicted of a conspiracy to cut down trees in a national forest, resulting in a total loss of $248,459. Newsome, 322 F.3d at 341 (quoting Hughey, 495 U.S. at 418). Defendant Newsome joined the conspiracy late and was found to be responsible for only $32,321 of the loss under the Sentencing Guidelines, but he was found responsible for the full loss

amount under the MVRA because that was the amount of loss the "conspiracy caused the" victim. Newsome, 322 F.3d at 342.

The same principle applies here. The count of conviction is the conspiracy to defraud Apple through the fraudulent return of tens of thousands of counterfeit devices by multiple co-conspirators. As a result, Apple's loss from the entire scheme is attributable to each defendant because the purpose of restitution is to "restor[e] [the victim] to a position he occupied before a particular event," i.e., make the victim whole. Hughey, 495 U.S. at 416; Newsome, 322 F.3d at 341. Accordingly, defendant is liable for $16,239,254 in restitution along with the other defendants. Therefore, the Court should order defendant to pay $16,239,254 in restitution to Apple, which should be jointly and severally liable with all defendants in this case, United States v. Yang Song, et al., No. 2:24-CR-00331-AB, and the defendant in United States v. Wenhui Huang, No. 2:24-CR-00405-AB.

## V. CONCLUSION

For these foregoing reasons, the government requests the Court sentence defendant to 33 months' imprisonment, followed by three years of supervised release, and order defendant to pay $16,239,254 in restitution to Apple (with a partial payment of $100,000 to be paid with 90 days of judgment), and the special assessment of $100.